UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| SIMING LI,<br><br>              Plaintiff,<br><br>        v.<br><br>LELAND DUDEK,<br><br>              Defendants. | Case No.   5:24-cv-02501-EJD<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 18 |

Plaintiff Siming Li ("Li") appeals the Commissioner of Social Security's[1] final decision determining that Li is no longer disabled and therefore ineligible for continuing disability benefits under Title XVI of the Social Security Act.  Mot. for Summ. J. ("MSJ"), ECF No. 14; Cross-MSJ, ECF No. 18; Opp'n to Cross-MSJ, ECF No. 21.

Having considered the parties' motions and the record in this matter, the Court **GRANTS** Li's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment.  Accordingly, the Court **REVERSES** the Commissioner's final decision and **REMANDS** for calculation and award of benefits.

I.     **BACKGROUND**

      A.     **Medical History**

      Li is a 43-year-old woman who suffers from several mental health conditions.  Tr. of Admin. Record ("AR"), ECF No. 8.  Li first sought treatment in 2005 for suicidal ideation stemming from her being sexually abused as a child.  Li received multiple medical diagnoses including adjustment disorder with depressed mood, recurrent major depression, PTSD, and

---

[1] The Current Commissioner, Leland Dudek, is automatically substituted as Defendant in place of his predecessor.  Fed R. Civ. P. 25(d).

United States District Court
Northern District of California

psychosis with visual hallucinations, and her physician prescribed medication. AR 735, 744, 746, 1108, 1109. Li sought treatment again in 2007 for suicidal ideation, insomnia, depression, and distractibility, and was again diagnosed with major depressive disorder and PTSD and prescribed medication. *Id.* at 753, 787, 780. 1110, 1111, 1118, 1121, 1122. During the years following, Li sought additional treatment from several mental health care providers who also diagnosed her with the conditions described above, as well as bipolar II disorder, ADHD, a reading disorder, and disorder of written expression. *Id.* at 1131, 1138, 1139, 1142, 1149, 1151, 1152, 1153, 1155, 1160. Li also had psychiatric hospitalizations in 2019 and 2022, one of which resulted in a three-day 5150 hold after Li was seen "was seen screaming, chasing down bystanders, knocking at people's doors, and [] punching and hitting her head against the wall." *Id.* at 1783, 1795, 1931, 1932, 2111.

### B.    Procedural History

Li filed for Title XVI Social Security Income ("SSI") and was found disabled in a Comparison Point Decision ("CPD") dated March 28, 2008. *Id.* at 127, 128. Li underwent a Continuing Disability Review ("CDR"), and in November 2018, Social Security determined that Li's disability had ceased due to medical improvement. *Id.* at 218.

Li appeared at a hearing before Administrative Law Judge ("ALJ") David LaBarre on July 16, 2021. *Id.* at 351. The ALJ issued an unfavorable decision on August 30, 2021. *Id.* at 144. Li requested the Appeals Council review the ALJ's decision. The Appeals Council vacated the decision and remanded Li's case for another hearing because the ALJ applied the post-2017 rules to his analysis in error. *Id.* at 165. Li appeared before the ALJ again in May 2023, and on August 30, 2023, the ALJ again issued an unfavorable decision. *Id.* at 14, 461. The ALJ decided that Li's disability ended on November 1, 2018, often repeating four justifications for his finding—Li had medically improved on medication, held various part-time jobs, could raise her two children, and reported her ability to work and function normally in several medical records from 2022.

Li commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARD

Courts review an ALJ's decision to deny Social Security benefits for substantial evidence. *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023).  There is substantial evidence when there is "more than a mere scintilla, but less than a preponderance" of evidence.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Put differently, substantial evidence is "such relevant evidence [that] a reasonable person might accept as adequate to support a conclusion."  *Id.*  If an ALJ's decision is not supported by substantial evidence, courts will reverse.  *Glanden*, 86 F.4th at 843.  Courts also review an ALJ's decision for legal error.  *Id.*  If the decision contains a legal error, courts will reverse that decision unless the legal error was harmless.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).  An error is harmless only when it is "inconsequential to the ultimate nondisability determination" or when "the agency's path [to its conclusion] may be reasonably discerned" despite the error.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (citations omitted).

## III.    DISCUSSION

Li claims that the ALJ erred in his decision to deny her benefits by: (1) failing to find Li's diagnosed dyslexia and ADHD severe impairments; (2) rejecting the opinions of Li's treating and examining sources without specific and legitimate reasons; (3) failing to provide clear and convincing reasons for rejecting the testimony of Li and Jie Ou Yang, her partner and the father of her children[2]; (4) finding that Li had medically improved; (5) relying on an Residual Functional Capacity ("RFC") that is not supported by substantial evidence; and (6) relying on Vocational Expert ("VE") testimony based on an incomplete hypothetical to find Li not disabled.  The Court addresses each alleged error in turn.

### A.    Severity of Mental Impairments

A severe impairment is any medically determinable impairment that (1) lasts or is expected to last for a continuous period of at least twelve months, and (2) has more than a minimal effect on

---

[2] Jie Ou Yang is referred to in the ALJ's decision as "Mr. Ouyang," and sometimes referred to as Li's "husband" or "friend."

1    an individual's ability to perform basic work activities.  20 C.F.R. §§ 416.909, 416.921.  The

2    inquiry at this stage is "a *de minimis* screening device to dispose of groundless claims."  *Smolen*,

3    80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)).

4        Here, the ALJ found that Li's "impairments of PTSD, bipolar disorder, unspecified

5    depressive disorder vs. major depressive disorder, and major depressive disorder (recurrent, severe

6    with psychotic features) in partial remission cause more than minimal limitation in the claimant's

7    ability to perform basic work activities."  AR 21.  However, the ALJ found  "insufficient evidence

8    in the treatment record to establish [Li's anxiety, dyslexia, and ADHD] as severe medically

9    determinable impairments since the cessation date."  *Id.*  Regardless, the ALJ considered "all

10   reported mental health symptoms and findings . . . as part of the claimant's PTSD, bipolar

11   disorder, and/or depressive disorder."  *Id.*

12       The Court finds that, although the ALJ failed to explain which evidence regarding Li's

13   anxiety, dyslexia, and ADHD he disregarded and why, any error here is harmless.  When an ALJ

14   has identified severe impairments, but could have identified additional severe impairments, the

15   omission is generally immaterial if the judge considers the limitations from those impairments

16   throughout the remainder of the analysis.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

17   Though the ALJ here did not find Li's anxiety, dyslexia, and ADHD severe impairments, his

18   analysis ultimately did not discount the limitations from these impairments on this basis.[3]

19   Therefore, reversal is not warranted on this ground.

20       **B.    Medical Opinions**

21       Under the applicable regulations, courts weigh medical opinions based on the extent of the

22   doctor's relationship with the claimant.  *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).

23   These relationships are categorized in "a three-tiered hierarchy."  *Id.* (citing *Smith v. Kijakazi*, 14

24   F.4th 1108, 1114 (9th Cir. 2021)).  At the top are treating physicians—or medical sources who

25   treat or evaluate the claimant and have an ongoing treatment relationship with her.  *See* 20 C.F.R.

26

27   ────────────────
     [3] The ALJ discounted medical opinions and Li's testimony regarding symptoms of these
     impairments for other reasons which the Court will discuss below.

28   Case No.: 5:24-cv-02501-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

§ 404.1527(a)(2); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036–38 (9th Cir. 2003). A treating physician's opinion is entitled to "substantial weight," and courts generally give it "more weight . . . than . . . the opinion of doctors who do not treat the claimant." *Woods*, 32 F.4th at 789 (cleaned up). In the middle tier are doctors who examine the claimant but do not have an ongoing relationship with her. *Id.* ("The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician."). To reject either a treating or an examining physician's opinion, an ALJ must provide "clear and convincing reasons" if the opinion is uncontradicted by other evidence, or "specific and legitimate reasons" otherwise, and the reasons must be supported by substantial evidence. *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)). The lowest-weighted tier comprises "physicians who only review the record." *Id.* (quotations omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* (quotations omitted).

Li claims the ALJ failed to provide legally sufficient reasons for assigning certain weight to the opinions of the following medical providers: (1) treating therapist Michelle Gayle, AMFT; (2) examining physicians Dr. Paul Martin and Dr. Maria Kerosky[4]; (3) examining physician Dr. Jacklyn Chandler; and (4) medical expert Dr. Mary Buban.[5]

### 1.    Michelle Gayle, AMFT

Michelle Gayle is Li's treating therapist who had been meeting with Li almost weekly since October 31, 2018. Ms. Gayle provided a Mental Residual Functional Capacity Report in December 2018. AR 971. There, she noted that Li relied on Mr. Yang to remind her of appointments, appeared tired, did not sleep well, had flashbacks based on trauma, and suffered

---

[4] Li groups Dr. Martin and Dr. Kerosky's opinions when challenging the ALJ's discussion of them.

[5] Li also argues in this section that the ALJ cited instances of "normal" mental status exams without contextualizing them against a record full of abnormal mental status examinations, mental health diagnoses, and involuntary psychiatric hospitalizations. However, Li does not cite to the normal mental status exams she references, instead citing generally to three pages of the ALJ's decision. The Court assumes Li references the reports throughout 2022 noting Li's ability to work and function normally and will examine these records in its analysis below.

United States District Court
Northern District of California

1    from low self-esteem, distrust, depression, nightmares, loss of appetite, low energy, and

2    anhedonia.  *Id.* at 975, 976, 977, 978.  She also noted that Li had been trying to attend community

3    college for 7–8 years but still had no degree, suffered from dyslexia and difficulties focusing and

4    learning, was frequently late to work due to lack of motivation, and was not able to be direct with

5    difficult communications.  *Id.* at 976, 978.  Ms. Gayle provided an updated letter summarizing

6    Li's treatment in June 2020 and noted that she continued to suffer nightmares, flashbacks,

7    depression, insomnia, anxiety, and a lack of motivation and focus.  *Id.* at 1018.  Ms. Gayle also

8    provided a more detailed Mental Impairments Questionnaire in December 2020.  *Id.* at 1754–59.

9    She similarly reported that Li had marked limitations in the ability to handle conflicts with others;

10    state her own point of view; respond to requests, suggestions, criticisms, corrections, and

11    challenges; set realistic goals; and maintain personal hygiene and attire appropriate for a work

12    setting.  *Id.*  She also noted that Li had extreme limitation in the ability to keep social interactions

13    free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; would miss more

14    than four days of work per month due in part to lack of childcare; and would remain off task more

15    than 30% of the time.  *Id.*  Ms. Gayle found Li had marginal adjustment even with medication and

16    therapy and concluded that Li was unable to work full-time due to lack of sleep, inability to take

17    medications, and intense PTSD flashbacks.  *Id.* at 1758, 1759.

18        The ALJ gave "little weight" to Ms. Gayle's opinion, finding it "heavily based" on Li's

19    subjective reports and "inconsistent with the treatment records showing significant improvement

20    of mental health symptoms with medication compliance, the ability to raise two small children

21    with little assistance from the claimant's partner, the ability to perform multiple part-time jobs,

22    and the claimant's 2022 reports that she was able to work and function properly without

23    difficulty."  *Id.* at 25.

24        Though, as the Commissioner highlights, Ms. Gayle may not be qualified as an acceptable

25    medical source,[6] the ALJ is nevertheless required to support his conclusions with clearly

26

27    _____

[6] The Commissioner raises this argument, but the ALJ did not assign weight based on this fact.

28

1    articulated reasoning and an accurate characterization of the record.  20 C.F.R. § 416.927(f)(1)

2    ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an

3    acceptable medical source if he or she has seen the individual more often than the treating source,

4    has provided better supporting evidence and a better explanation for the opinion, and the opinion

5    is more consistent with the evidence as a whole.").  The ALJ's reasonings fall short of meeting

6    this standard for several reasons.

7          First, the fact that Ms. Gayle's opinion may be based heavily on Li's subjective reports is

8    not a reason on its own to discredit her opinion, as it is inescapable that psychiatric conditions

9    "will always depend in part on the patient's self-report."  *Buck v. Berryhill*, 869 F.3d 1040, 1049

10   (9th Cir. 2017).  While the ALJ is permitted to reject opinions premised largely on the claimant's

11   own accounts, he may do so only when those complaints have been properly discounted.  *Morgan*

12   *v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).  However, the ALJ did not

13   identify which, if any, subjective reports underlying Ms. Gayle's opinions he discounted here and

14   why.  Likewise, it appears the ALJ also did not consider the continuous relationship Ms. Gayle

15   had with Li and the consistency of Li's reports across the years of consistent treatment.

16         Second, the ALJ did not explain why the ability to raise her own children is inconsistent

17   with Ms. Gayle's opinion that Li suffered from symptoms that would impact her ability to work,

18   such as a lack of sleep and PTSD flashbacks.[7]  As the Ninth Circuit has long held, "claimants

19   should not be penalized for attempting to lead normal lives in the face of their limitations."  *Smith*

20   *v. Saul*, 820 F. App'x 582, 585 (9th Cir. 2020) (internal quotation marks omitted) (quoting

21   *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)):

22              [M]any home activities are not easily transferable to what may be the
23              more grueling environment of the workplace—particularly for
              claimants suffering from mental illness, who may be able to limit
24              environmental stressors, and thus experience improved functioning,
              at home in a way that is impracticable at work. That [the claimant]
25              was able on occasion to perform household chores, feed her animals,
              leave her home, shop for groceries, and visit family members does not

26

27   _____
     [7] The Commissioner references this ability as merely "show[ing] some intact abilities in the basic
     areas of mental functioning."  Cross-MSJ 16.

28   Case No.: 5:24-cv-02501-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT
                                        7

United States District Court
Northern District of California

in any way detract from her credibility as to her overall disability. *Id.* (cleaned up) (internal quotation marks and citations omitted). So too here, when properly contextualized, Li's ability to care for her own children is not inconsistent with Ms. Gayle's opinion regarding Li's symptoms and limitations.

Third, while the ALJ cites to records noting Li's ability to work and function properly without difficulties in 2022, the ALJ neglects to contextualize these records with the evidence that Li was hospitalized for three days on a 5150 hold in May 2022—the same month the records note her ability to work and function properly without difficulties—after she "was seen screaming, chasing down bystanders, knocking at people's doors, and began punching and hitting her head against the wall." AR 1931, 1932.[8] In other words, the ALJ failed to contextualize the medical records "in the broader context of [the claimant's] impairment." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (citations omitted).

Fourth, the ALJ's characterization of Li as having a "demonstrated ability to perform multiple part-time jobs" is not supported by substantial evidence. For example, at the time of the first hearing, Li had been working as a delivery driver for UberEats and an "in-home healthcare worker" for her mother-in-law. Though Li completed approximately fifteen hours of work per week with UberEats, she testified that Mr. Yang was "always" with her while she worked because she became too nervous or depressed to perform the job. After Mr. Yang would finish his own full-time job, he would accompany Li on her shift and drive the car, operate the GPS, drop off the food, and sometimes pick up the food from the restaurants. AR 45–47, 57. While the ALJ noted Li's testimony that "she requires assistance from her partner," this level of assistance contradicts the ALJ's finding regarding Li's ability to work. *Id.* at 22. Regarding being an "in-home healthcare worker," Li testified that she gets paid by Mr. Yang's father (who Li refers to as her "father-in-law") to help Mr. Yang's mother (who Li refers to as her "mother-in-law") for about twenty hours per week with cleaning some dishes, brushing or cleaning her hair, and taking her out

---

[8] The ALJ noted this evidence once in his analysis, stating only that "[t]he claimant had a psychiatric hospitalization in May 2022 but the treatment record does not show episodes of decompensation of extended duration since the cessation date." AR 25.

1    shopping.  Even with these tasks, Li gets support from Mr. Yang, who drives them to go shopping.

2    As for the other work experience in the record, Li worked one day at a special education

3    kindergarten in January 2023 before being fired because she could not work full-time, with Li

4    reporting her employer saying that she "was not ready to do the job."  Li also worked for a few

5    months at a daycare seven years ago prior to the birth of her daughter, but she reports being unable

6    to work with children in that capacity now because the birth of her daughter has caused her to

7    relive the trauma she experienced as a young girl and experience an increase in PTSD flashbacks.

8    Considering the record in this context, this work history does not provide substantial evidence to

9    support the ALJ's finding that Li has a "demonstrated ability to perform multiple part-time jobs."

10           Finally, the ALJ failed to explain how Ms. Gayle's opinion is inconsistent with the

11   treatment records showing some improvement with medication.  In the Ninth Circuit,

12   "[i]mpairments that can be controlled effectively with medication are not disabling for the

13   purposes of determining eligibility for SSI benefits."  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th

14   Cir. 2006).  However, the improvements while medicated must also show a return to a level of

15   function required to work.  *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

16   Further, "cycles of improvement and debilitating symptoms are a common occurrence" for

17   individuals with mental health disorders, and "it is an error to pick out a few isolated instances of

18   improvement . . . and to treat them as a basis for concluding a claimant is capable of working."

19   *Garrison*, 759 F.3d at 1017.  A claimant "does not need to be utterly incapacitated in order to be

20   disabled," and symptoms may wax and wane, with greater functionality at times and worse at

21   others.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

22           Here, while the evidence shows that psychiatric medications such as Effexor, Zoloft,

23   Wellbutrin, Lexapro, Abilify, Depakote, Ritalin, Lamictal and Risperidone have reduced the

24   severity of her symptoms, even while medicated, the record contains evidence from sources other

25   than Ms. Gayle showing Li reported frequent depression, paranoia, mood instability, and suicidal

26   ideation to various providers and was still unable to sleep through the night due to nightmares.

27   *See, e.g.*, AR 222, 783, 787, 859, 1030, 1155, 1322, 1552, 1575, 1576, 1754, 1755, 1758, 1759,

28   Case No.: 5:24-cv-02501-EJD

United States District Court
Northern District of California

1    1959, 1960, 1968, 2076, 2110, 2111, 2113, 2142, 2143, 2144.  The ALJ erred by isolating areas of

2    improvement outside the context of this record and using them to assign lesser weight to Ms.

3    Gayle's opinion.  The Court also notes that, even if medication caused the level of improvement

4    the ALJ suggests, the ALJ failed to grapple with the evidence showing consistent issues with Li's

5    ability to take her medication as prescribed.

6        For these reasons, the Court finds that the ALJ's stated justifications for assigning "little

7    weight" to Ms. Gayle's opinion are not supported by substantial evidence.

8                    **2.    Dr. Paul Martin and Dr. Maria Kerosky**

9        Dr. Paul Martin and Dr. Maria Kerosky are Social Security consultative examiners who

10    examined Li in 2018 and 2019 respectively and found that Li had "marked" and "moderate to

11    marked" mental functional limitations.  *Id.* at 23, 24, 861.  Dr. Martin concluded that Li suffered

12    from cognitive and memory impairment and was markedly impaired at performing work activities

13    on a consistent basis and maintaining regular attendance in the workplace.  *Id.* at 860, 861.  Dr.

14    Kerosky also noted that Li's work manner was impulsive, and she gave up on tasks she found

15    difficult, leading to marked impairments in adapting to changes or stressors in the workplace.  *Id.*

16    at 1006, 1008, 1011.

17        The ALJ gave "little weight" to Dr. Martin's opinion as "inconsistent with the progress

18    notes from Pathways to Wellness, illustrating significant improvement of mental health symptoms

19    when the claimant is complaint with medication, as well as the claimant's ability to concurrently

20    perform multiple part-time jobs while raising a newborn and infant."  *Id.* at 24.  The ALJ then

21    cited medical records from May, June, August–November 2022 noting Li's ability to work and

22    function properly without difficulty.  *Id.*  The ALJ further disagreed with Dr. Martin's ultimate

23    conclusion, citing to his other "clinic observations showing generally normal mental status

24    findings."  *Id.*

25        The ALJ also gave "partial weight" to Dr. Kerosky's opinion because "the conclusions are

26    generally consistent with the underlying treatment record," but the ALJ did "not agree with any

27    marked mental limitations," finding that conclusion is "inconsistent with the progress notes from

United States District Court
Northern District of California

28    Case No.: 5:24-cv-02501-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT
                    10

United States District Court
Northern District of California

1    Pathways to Wellness, illustrating significant improvement of mental health symptoms when the

2    claimant is complaint with medication, as well as the claimant's ability to concurrently perform

3    multiple part-time jobs while raising a newborn and infant." *Id.* The ALJ again cited the same

4    medical records from 2022 noting Li's ability able to work and function properly without

5    difficulty. *Id.*

6          The Court finds that the ALJ's decision to give little or partial weight to these opinions is

7    not supported by substantial evidence. Again here, the ALJ failed to tie Li's ability to raise her

8    own children to her ability to withstand the stress of a workday or ability to interact with others on

9    a regular basis. The Court repeats, "claimants should not be penalized for attempting to lead

10   normal lives in the face of their limitations." *Smith*, 820 F. App'x at 585. Further, while the ALJ

11   cited to records noting Li's ability to work and function properly without difficulties in 2022, Li

12   was also hospitalized for three days on a 5150 hold the same month the records note her ability to

13   work and function properly without difficulty. Finally, as the Court noted above, though there is

14   evidence that Li's symptoms improved on medication, there is also substantial evidence that Li

15   still experienced considerable symptoms while medicated and difficulties taking her medication as

16   prescribed.

17         Accordingly, here too, the ALJ's justifications for assigning little or partial weight to the

18   opinions of Dr. Martin and Dr. Kerosky are not supported by substantial evidence.

19                    **3.    Dr. Jacklyn Chandler**

20         Dr. Chandler is another Social Security consultative examiner who examined Li in

21   September 2022. The ALJ noted Dr. Chandler's finding that Li "had no limitation in the ability to

22   understand and remember simple instructions, carry out simple instructions, and make judgments

23   on simple work-related decisions"; "had mild to moderate limitation in the ability to make

24   judgments on complex work-related decisions, as well as the ability to respond appropriately to

25   usual work situations and to changes in a routine work setting"; and "had moderate limitation in

26   the ability to interact appropriately with the public, supervisors, and coworkers." AR 26.

27         The ALJ assigned "great weight" to this opinion, finding that "it is consistent with the

28   Case No.: 5:24-cv-02501-EJD

underlying record, which shows improvement of the claimant's mental health symptoms when the claimant was complaint with medication, the ability to care for two small children, and the ability to perform multiple part-time jobs." *Id.*

The Court finds substantial evidence supports the ALJ's finding that Dr. Chandler's opinion is consistent with the underlying record showing some improvement of symptoms while compliant with medication; however, for all the reasons discussed above, Li's ability to care for her children, history of part-time work, and some improvements on medication are insufficient circumstances to measure the consistency Dr. Chandler's opinion. Further, the Court finds the ALJ erred by omitting from his analysis Li's testimony regarding the nature of her visit with Dr. Chandler. Li testified that Dr. Chandler rushed the appointment because she had another upcoming appointment and asked only simple questions like what medication she was on and her symptoms before rushing her out. Li was not asked about her day-to-day and felt she was not able to explain her mental health history or symptoms. *Id.* at 66. The ALJ did not acknowledge this testimony, instead noting that Li's counsel "complained that she was not allowed into the examination room and that the claimant reported that the examination was cursory." *Id.* at 26. The ALJ concluded that counsel's "comments do not change the fact that Dr. Chandler's limitations are consistent with the overall record." *Id.* Though the statement from Li's counsel regarding Li's visit contains some similar information, Li's detailed firsthand testimony provided important context that the ALJ failed to consider when evaluating the weight of Dr. Chandler's opinion.

### 4. Dr. Mary Buban

Dr. Mary Buban is the medical expert who testified at Li's 2021 hearing. The ALJ noted Dr. Buban's finding that Li had "mild to moderate limitation in the four basic areas of mental functioning." *Id.* at 26.

The ALJ found this opinion "persuasive" because "[i]t is supported by the expert's reference to the medical record showing improvement of the claimant's mental health symptoms when the claimant was complaint with medication," and it is "consistent with the overall record, showing the ability to care for two small children, the ability to perform multiple part-time jobs,

Case No.: 5:24-cv-02501-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
12

United States District Court
Northern District of California

1  and the claimant's 2022 reports that she was able to work and function properly without

2  difficulty." *Id.*

3      As an initial matter, the Court observes that the ALJ failed to assign the proper assessment

4  "weight" per the controlling regulations, instead classifying Dr. Buban's opinion as "persuasive."

5  20 C.F.R. § 416.927(c).  Though unclear, this language suggests that the ALJ assigned the greatest

6  weight to Dr. Buban's expert opinion, which should fall on the lowest tier of the regulation's

7  hierarchy below those of the examining and treating physicians.  Regardless, again here, the ALJ

8  failed to draw the connection between Li's ability to care for her children and her ability to endure

9  work, failed to accurately describe the evidence of Li's work history, and failed to put the reports

10  of normal functioning throughout 2022 into context with Li's hospitalization and other reports of

11  continued symptoms.  Therefore, the Court finds the ALJ's justifications for finding Dr. Buban's

12  opinion "persuasive" are inadequate here as well.

13      **C.    Subjective Testimony and Statement**

14      Li claims the ALJ also failed to sufficiently explain his decision to discount Li's subjective

15  testimony, as well as the statement submitted by Mr. Yang.

16          **1.    Claimant's Testimony**

17      In dealing with a claimant's subjective testimony, when a claimant has medically

18  supported impairments that could cause his symptoms, the ALJ must provide "specific, clear, and

19  convincing reasons" for "reject[ing] the claimant's testimony about the severity of those

20  symptoms."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1197–98 (9th Cir. 2024) (quoting *Brown-*

21  *Hunter*, 806 F.3d at 488–89).  This requires the ALJ to "show [her] work" by providing an

22  explanation "clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489,

23  499 (9th Cir. 2022).

24      In *Brown-Hunter*, the ALJ made the conclusory declaration that "the claimant's statements

25  concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

26  extent they are inconsistent with the above residual functional capacity assessment."  *Id.* at 493.

27  Then, the ALJ merely summarized the medical evidence before paraphrasing her earlier

28  Case No.: 5:24-cv-02501-EJD

conclusion, stating again that "the functional limitations from the claimant's impairments were less serious than she has alleged." *Id.*  The Ninth Circuit held that the ALJ's explanation failed to satisfy the specific, clear, and convincing standard because it did not specifically identify portions of the claimant's testimony that were allegedly inconsistent with the record, and the explanation did no more than summarize the medical evidence. *Id.* at 494.  Although a court might have been able to draw reasonable inferences from the summarized evidence, the Ninth Circuit explained that doing so results in the court improperly making credibility determinations in place of the ALJ. *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  Rather than allowing a court to infer the ALJ's reasoning, the specific, clear, and convincing standard requires the ALJ to do the work of laying out her reasoning by linking specific testimony to specific evidence undermining that testimony. *Id.*  The purpose is to allow courts to review the ALJ's actual reasoning instead of speculating on what that reasoning may have been. *Id.*

> Here, the ALJ began his analysis by stating the following:

> > After considering the evidence of record, the undersigned finds that the claimant's current medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's and her friend's[9] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

AR 22.  He then proceeded to summarize Li's medical records.  Like the ALJ in *Brown-Hunter*, the ALJ here did not tie specific evidence to specific testimony.  Rather, the ALJ simply concluded that the alleged "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence." *Id.*

> Because the ALJ failed to identify what testimony was problematic and why, remand is required on this basis.

---

[9] The ALJ presumably refers to Mr. Yang here, which the Court will examine in the section below.

### 2.    Source Statement from Jie Ou Yang

The Ninth Circuit has explained that ALJs "must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053.  Lay testimony "as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Id.* (quotations omitted) (emphasis in original).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Id.* (citations omitted).

Again here, in the same paragraph quote above, the ALJ initially provided no explanation for why he would not consider Mr. Yang's statement.  At one point, however, the ALJ explicitly discounted Mr. Yang's statement as to Li's physical limitations and limited lifting and walking tolerance because it directly contradicted evidence from Li's physicals and her testimony regarding her exercise practice. AR 22.  The ALJ's finding that this statement contradicts the record is supported by a clear justification and substantial evidence; however, the ALJ still erred by failing to provide any reason to reject the remainder of Mr. Yang's statement.

### D.    Finding Petitioner Medically Improved

Li also asserts the ALJ's finding at step two that Li medically improved is not supported by substantial evidence.

At step two, an ALJ must determine whether a claimant has experienced medical improvement.  20 C.F.R. § 416.994(b).  Medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 416.994(c)(1).  If there has been no improvement, the claimant remains disabled and benefits continue.  20 C.F.R. § 416.994(b).  Evidence of improvement must be examined "in the broader context of [the claimant's] impairment." *Attmore*, 827 F.3d at 877 (citations omitted).

Here, the ALJ determined that medical improvement occurred on November 1, 2018.  In so finding, the ALJ noted that the "[t]reatment notes show that mental impairments are well-controlled with medication."  AR 20.

1    While the evidence supports the ALJ's conclusion that Li had shown some improvements

2 in her symptoms while medicated, the ALJ was required to examine this evidence in the broader

3 context of Li's impairments, which as discussed in detail above, shows that even when properly

4 medicated, Li still experienced symptoms including recurring and intrusive thoughts,

5 hallucinations, nightmares, hypervigilance, avoidant behaviors, depression, low energy, social

6 withdrawal, crying, anhedonia, poor sleep, irritation, poor frustration tolerance, problems with

7 memory and concentration, feelings of hopelessness, and suicidal ideation.  The evidence also

8 shows a cycle of difficulty taking her medication followed by psychiatric hospitalizations.

9    The ALJ again here failed to examine Li's improvement in this broader context, and his

10 finding of medical improvement is not supported by substantial evidence.

11    **E.    Residual Functional Capacity**

12    Li further argues that the ALJ's RFC assessment is not supported by substantial evidence

13 for the same reasons discussed above.  Because the ALJ provided legally insufficient reasons for

14 discounting certain medical and lay testimony and proceeded to formulate an RFC based on his

15 conclusions with respect to those opinions, the Court finds that the ALJ's RFC, in turn, is not

16 supported by substantial evidence.

17    **F.    Vocational Expert Testimony**

18    Finally, Li argues that the ALJ erred by relying on vocational expert testimony based on

19 incomplete hypotheticals.  The Court agrees.  Because the ALJ improperly discounted certain

20 medical opinions and testimony, his resulting RFC finding did not account for all of Li's

21 limitations.  It follows, then, that the hypothetical posed to the vocational expert did not properly

22 encompass all of Li's limitations.

23    **G.    Remedy**

24    When the ALJ's decision is premised on legal error or unsupported by substantial

25 evidence, the Court has the discretion to remand for award of benefits or further administrative

26 proceedings.  42 U.S.C. § 405(g); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see*

27 *Garrison*, 759 F.3d at 1020–21.  Courts remand with instructions to calculate and award benefits

28 Case No.: 5:24-cv-02501-EJD

United States District Court
Northern District of California

1    when: "(1) the record has been fully developed and further administrative proceedings would

2    serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

3    evidence . . . ; and (3) if the improperly discredited evidence were credited as true, the ALJ would

4    be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  The plaintiff

5    also must show that "an evaluation of the record as a whole [does not] create[] serious doubt that a

6    claimant is, in fact, disabled." *Id.* at 1021.

7        Here, the Court finds remand with instructions to calculate and award benefits appropriate.

8    First, the record is fully developed.  The ALJ has conducted two separate hearings two years apart

9    because of the Appeals Council's first remand.  Second, the ALJ's rejection of medical source

10   opinions and Li's testimony was legally insufficient for the reasons discussed above.  Most

11   notably, the ALJ repeatedly rejected or gave little weight to evidence that he found conflicted with

12   Li's ability to care for her own children, her work history, evidence of some improvement while

13   medicated, and notes in Li's medical history indicating normal functioning.  However, Li's ability

14   to raise her own children does not conflict with her abilities to maintain employment, her work

15   history is slim and has been heavily accommodated by Mr. Yang, substantial evidence does not

16   show that Li's symptoms improved on medication to the level required to work, and her medical

17   history must be evaluated as a whole, which reveals that Li had a physiocratic hospitalization the

18   same month that her records noted normal functioning.

19       Third, the ALJ would be required to find Li disabled on remand if the improperly

20   discredited evidence were credited as true, and the record as a whole does not cast serious doubt

21   upon Li's allegations of disability.  Substantial evidence shows continued disability since 2018—

22   specifically, continued symptoms consistent with diagnoses of anxiety, depression, PTSD, ADHD,

23   and dyslexia, as well as marked impairments identified by multiple medical professionals.  To

24   illustrate this point, the Court will briefly summarize some of the relevant record.

25       In October 2018, Dr. Martin diagnosed Li with major depressive disorder and PTSD with

26   symptoms including recurring and intrusive thoughts, nightmares, hypervigilance, avoidant

27   behaviors, depression, low energy, social withdrawal, crying, anhedonia, poor sleep, irritation,

28   Case No.: 5:24-cv-02501-EJD

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    poor frustration tolerance, problems with memory and concentration, feelings of hopelessness,

2    suicidal ideation.  AR 859–60.  He concluded that Li was markedly impaired in multiple work-

3    related functional categories.  *Id.* at 975.  Li was medicated with Effexor and Lamictal at this time.

4    Soon after, Li began treatment at Pathways to Wellness in November 2018, where Dr. Versales

5    continued to prescribe Effexor and Dr. Woldu monitored her symptoms.  *Id.* at 1022, 1766.

6         In September 2019, Dr. Kerosky diagnosed Li with PTSD and unspecified depressive

7    disorder v. major depressive disorder with symptoms including difficulty with sleep, stress,

8    leaving the house, focusing, feeling unsafe, low energy, flashbacks, nightmares, suicidal thoughts,

9    auditory hallucinations, and restlessness.  *Id.* at 1005–10.  Dr. Kerosky concluded that Li suffered

10   marked impairment in a number of work-related functional categories, observing in Li's mental

11   status exam that Li did not know the current president and suffered mildly impaired

12   comprehension, borderline intellectual functioning, and extremely low immediate memory and

13   fund of knowledge.  *Id.*  Li was medicated with Effexor at this time.

14        In January 2020, Li gave birth to her first son, stopped taking Effexor, and began Zoloft to

15   breastfeed.  *Id.* at 1084.  Mr. Yang had to extend his FMLA leave because Li struggled to care for

16   their son with her residual depressive and PTSD symptoms, including poor sleep, anxiety,

17   hypervigilance, nightmares, hallucinations, and the feeling that her mother was watching her and

18   somehow knew how she was feeling.  *Id.* at 1069, 1071, 1073, 1074, 1075, 1076, 1080, 1081.  Li

19   gave birth to her daughter in May 2021 and experienced increased psychiatric symptoms of

20   anxiety and worry as she feared the social and physical abuse she suffered would happen to her

21   daughter.  *Id.* at 2159.  Dr. Woldu concluded that Li suffered from marked restriction in her

22   activities of daily living and marked episodes of decompensation and increased symptoms.  *Id.*

23   2158, 2159.

24        In September 2021, Li reported guilt, low energy, and sadness with the triggering event

25   being possibly seeing her sister and abusive mother.  *Id.* at 2146.  PA Pearson observed a flat and

26   blunted affect, depressed and irritable mood, hyperactive, restless, and agitated behavior, loss of

27   interest, impaired short-term memory, distracted attention, auditory and visual hallucinations, and

28   Case No.: 5:24-cv-02501-EJD

United States District Court
Northern District of California

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
18

1   blocked thought process.  *Id.* at 2147, 2148, 2151, 2152.  Li saw her mother a few months later

2   and her symptoms spiked, reporting increased sadness, decreased interest, increased feelings of

3   guilt, decreased energy, decreased concentration, psychomotor agitation, sleeping 2–3 hours a

4   night, distractibility, grandiosity, racing ideas, and talkativeness.  *Id.* at 2142.  The next month, PA

5   Pearson assessed Li's anxiety to still be moderate to high, with blunted and anxious affect and

6   depressed, irritable, and agitated mood.  *Id.* at 2138, 2139.

7        In May 2022, Li stopped taking her medication and was placed on a 5150 hold after she

8   "was seen screaming, chasing down bystanders, knocking at people's doors, and began punching

9   and hitting her head against the wall."  *Id.* at 1931, 1932.  She was diagnosed with bipolar disorder,

10  unspecified; unspecified psychosis not due to a substance; and impulse disorder, unspecified.  *Id.* at

11  1931.  RN Natalia Vikhliantseva noted that Li appeared hyperverbal, euphoric, hyperactive, and

12  tangential in thought process.  *Id.* at 1934, 1935.  Mr. Yang noted that Li had been acting more

13  strangely and had not slept consistently for a month.  *Id.* at 1935.  Dr. Combs noted that her

14  symptoms were manic, her insight, judgment, and impulse control were limited, and her thought

15  process was disorganized and very tangential.  *Id.* at 1937.  Approximately one week after

16  admission, while medicated and in a structured environment, Li continued to be paranoid and said

17  that she learned the "good" languages at school, because "you can't learn the bad ones or you read

18  people's minds."  *Id.* at 1959, 1960.  At discharge, her mood remained elevated and hyperverbal.

19  *Id.* at 1950, 1968.  Following her hospitalization, Li reported to NP Jafarabad that memories of her

20  childhood and watching her daughter grow older triggered flashbacks related to her childhood

21  traumas.  *Id.* at 2111.  NP Jafarabad observed pressured speech, anxious mood, racing thoughts, and

22  fair insight and judgment and again increased her dose of Zoloft.  *Id.* at 2112, 2113, 2118, 2121.

23       As for Li's testimony, in 2021 and 2023, Li testified that she had difficulty interacting with

24  others, including a fear of communicating with others and struggles with focusing on people when

25  they talk.  *Id.* at 41–111.  She testified that her mental health had worsened in the past several

26  years because she increasingly uncovered more memories from her traumatic childhood as her

27  daughter grows closer to the age when she herself was abused as a child.  She testified that she

United States District Court
Northern District of California

United States District Court
Northern District of California

1   relied on Mr. Yang for many things, from help with bills to hands-on help with doing her part-time

2   work, and often suffered from depression, anxiety, nightmares, and strange fears.  She testified that

3   she experienced suicidal ideation at times, heard her mother's voice at night, had difficulty

4   remembering things, and often required reminders due to her problems focusing and concentrating.

5   Li's testimony is consistent with the medical history described above; specifically, her

6   complaints are consistent with her diagnoses of anxiety, depression, PTSD, ADHD, and dyslexia,

7   as well as the marked impairments identified by Ms. Gayle, Dr. Martin, and Dr. Kerosky.  If this

8   evidence were not discredited in error, the ALJ would have been required to find Li disabled.

9   Though progress notes from Pathways to Wellness indicate that Li had the ability to work and

10   function without difficulty for several months in 2022 and there is evidence showing some

11   improvement of symptoms when properly medicated, in the context of the substantial evidence

12   summarized above, these facts do not cast serious doubt on the allegations of disability.  *See, e.g.,*

13   *Wellington*, 878 F.3d at 876 (finding evidence of improved symptoms *and* a "return to a level of

14   function close to the level of function they had before they developed symptoms or signs of their

15   mental disorders" can undermine a claim of disability) (internal quotation marks omitted).

16   Therefore, the Court finds remand with instructions to calculate and award benefits

17   appropriate under these circumstances.

18   **IV.    CONCLUSION**

19   Based on the foregoing, the Court **GRANTS** Li's motion for summary judgment, **DENIES**

20   the Commissioner's motion for summary judgment, and **REMANDS** for calculation and award of

21   benefits.

22   **IT IS SO ORDERED.**

23   Dated: April 28, 2025

24

25

26   EDWARD J. DAVILA
     United States District Judge

27

28   Case No.: 5:24-cv-02501-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT
     20